Rogers, &c.
vs
Thomas et al.

---

Chancery.

## Rogers, &c. *vs* Thomas *et al.*

*Case* 110.

### Appeal from the Woodford Circuit.

*Will. Issue on bill filed contesting a will. Onus probandi. Parties. Opening and conclusion of argument.*

May 29.

Chief Justice Robertson delivered the Opinion of the Court.

The case stated.

After probate, in the County Court of Fayette, of a paper purporting to be the last *will* of *Joseph Rogers,* deceased, some of his heirs filed a bill in Chancery, in the Circuit Court of that county, for contesting the testamentary validity of the document thus admitted to record in the County Court.

Issue formed in the case in Woodford, and exception thereto.

The Circuit Court of *Fayette* ordered an issue, *devisavit vel non,* and afterwards, on a change of venue to *Woodford,* the judge of that Circuit, upon the filing of an amended bill admitting the formal publication but alleg-

ing incapacity and extraneous influence, made an order, *ex officio*, for a jury to try the issue, "whether Joseph "Rogers, at the time of making and publishing the paper "produced as his last will and testament, *was of un-* "*sound mind and memory*, and whether said writing was "procured to be signed and published by fraud and un- "due influence."

The defendants, (now appellants,) having excepted to that order and having offered an additional issue, *whether the paper was the last will of Joseph Rogers, deceased*, which was rejected, filed a plea, averring *that it was his true last will*, to which the other party replied that, though it was formally published as such, the said *Rogers*, at the time of publication, *was of unsound mind*, and that the publication was fraudulently procured, *and concluded to the country*.

Upon that issue, a jury found that the paper was *not the last will of Joseph Rogers, deceased*; and the Court having refused a new trial, rendered a decree declaring *that it was not his will*. But there is no formal bill of exceptions certifying what the evidence was upon the trial of the issue.

*Finding of the jury on the issue formed.*

In the revision of that decree, now sought to be reversed, we shall consider two preliminary questions only, that is: 1st. Whether the Circuit Judge of *Woodford*, erred in making up the issue: and 2ndly. Whether there was available error in trying that issue when all necessary parties were not before the Court.

*Points presented for revision.*

I. The 11th Sec. of the act of 1797, (*Statute Laws*, 1543,) which regulates this proceeding, provides that, "When any *will* shall be exhibited to be proved, the "Court, having jurisdiction as aforesaid, (that is, a "County Court,) may proceed *immediately* to receive "*the proof thereof*, and grant a certificate of *such pro-* "*bate*: if, however, any person interested shall, within "seven years afterwards, *appear*, and by his bill in "Chancery, *contest* the validity of the *will*, an issue shall "be made up, whether the writing *produced*, be the last "*will* of the testator or not, which shall be tried by a ju- "ry, whose verdict shall be final between *the parties*—sa- "ving to the Court a power of granting a new trial for

*The statute of 1797, on the subject.*

"good cause, as in other trials—but no such party ap-
"pearing in that time, *the probate shall be forever bind-*
"*ing*, &c."

Its interpreta-
tion, as applica-
ble to this case.

The tenor of this enactment seems to authorize the in-
ference, that the Legislature intended to provide against
the ordinary probates, altogether or partially *ex parte*, by
allowing seven years to any person or persons interested,
to *appear* and *contest*, as he or they might in the first in-
stance have appeared and contested the validity of the
*document as a will*, and not to revise the correctness of
the probate thereof in the County Court, by a bill in
Chancery, and the trial by jury of such an issue as *neces-
sarily* involves the comprehensive question, whether it be
the last will or not.

The modes of
proving wills in
England,1st,"*in
common form*,"
2d, "*in the form
of law*" or "*per
testes*," which
might have been
done anciently,
at any time with-
in 30 years.

In *England* there were two modes of proving a testa-
ment of personalty in the proper Court of probate: 1st.
"*in the common form*," 2nd. "*in the form of law*,"
sometimes called "*solemn form*" or "*per testes*." The
first, like the ordinary mode of probate in our County
Courts, was *ex parte*, the last was *inter partes*, upon cita-
tion of all persons interested, and upon full proof by
witnesses, for and against the *will*. Probate in the first
mode, though an anomaly in jurisprudence, was, never-
theless, authorized by the frequent necessity of such a
summary procedure for preventing the embarrassing and
even injurious consequences to creditors and others, which
might often result from unavoidable delays, incident to
regular citations for contesting, in the more "*solemn
form*," and establishing wills finally and conclusively;
and therefore, this ordinary probate, *ex parte*, was good
until the recorded document had been contested and re-
jected, upon a trial in the more effectual mode, which
might have been done anciently at any time within thirty
years, which were allowed to any person interested, to
*appear* and *require the executor to prove the will in the
solemn and conclusive form, upon citations to all concern-
ed.* And upon such requisition, the former probate,
without contest or citation, was waived, and it was the
executors duty to prove the will as if it had never been
recorded: *Godolph. pt.* 1, *c.* 20, *s.* 4; *Swinb. pt.* 6, *s.* 14,
*pt.* 3. *Swinburne* considered *ten* years as the more mod-

ern limitation; but, in *Newell* vs *Weeks*, 2 *Philimore* 331, *Sir William. Wynne* seemed to think that there was no other limitation than that of convenience and justice, according to the circumstances of each case.

· In *Kentucky*, the accustomed and almost universal mode of probate in the County Courts is, "in the common form," by proof of the subscribing witnesses immediately on the voluntary presentation of the will by the executor.   To consider such hasty and *ex parte* probates final and conclusive *at once*, would have been unreasonable.   It must have been felt to be equally unreasonable to allow as long a time as thirty years, for contesting the will and requiring probate in the more satisfactory and effectual mode; and it seems that our Legislature deemed a *jury*, under the supervision and control of a Chancellor, a more eligible tribunal than a County Court, for the ultimate contest and conclusive probation.

Thus we have a plain clue to the true object and construction of the 11th section of the statute already quoted.

In declaring that the proper County Court "may proceed *immediately* to receive the proof" *of a will*, the Legislature evidently contemplated probates "*in the common form;*" and this is fortified by the provision that "if, *however*, (or nevertheless) any person interested shall, within seven years afterwards, *appear*, and by his bill in Chancery, *contest*," &c. that is, a person who had not before appeared and contested the will.   It, therefore, seems to us that the provisions of this 11th section were intended as an improved substitute for the citation and "*solemn form*" of probate in *England; requiring*, as in England, a *full and original probate*, to *operate finally as to all persons concerned*.   And, to guard against the accidents of a lapse of seven years, the 15th section of the same statute provides that, "in all such trials by jury, the "certificate of the oaths of the witnesses, at the time of "the *first probate*, shall be admitted as evidence, to have "*such weight* as the jury shall think it deserves," which also implies, 1st, by "the *first probate*," that the bill in Chancery was intended as the citation and "solemn form" in England, to *require* a *second probate;* and 2dly, by *admitting* as evidence on the trial, "the certificate of the

---

ROGERS, &c.
*vs*
THOMAS *et al.*

In Ky. the proof in the County Court is according to the *common form* by the executor and not conclusive.

The statute of 1798, sec. 11, provides an improved substitute for the proof of wills, according to the "form of law," and requiring, as in England, "*an original probate to operate finally as to all persons concerned.*"

ROGERS, &c.
vs
THOMAS et al.

Bills in Chancery, whatever may be the form, contesting a will, brings up the contested paper for final probate or rejection, to be tried as tho' there had been no probate.

oaths," &c. to have "such weight as it deserves," &c. that *the fact* of an *ex parte* probate was not, *per se*, sufficient proof to authorize a final and contested probate.

Such a bill, whatever may be its allegations or its form, brings up the contested paper for final probate or rejection; and the jurisdiction of the Chancellor and jury, in every such case, is virtually that of a Court of probate.

The case is not tried on the record of the County Court, but is to be heard and decided as if there had been no probate, and should be influenced no more by the probate in the County Court than a similar case should be in this Court, when brought up from a County Court, except so far as the certificate of the oaths on the first probate, when read, may be entitled to some effect in the opinion of the jury: See *Higdon's heirs* vs *Higdon's devisees*, 6 J. J. Marsh. 52.

Def't on a trial of the validity of a will, on bill filed, is bound to prove *every fact necessary to authorize the probate of a will in the county court*, not admitted by the pleadings, whatever may be the *form* of the issue, defendant holds the affirmative, on the trial before the jury.

Then, in every such proceeding by bill, the party defendant must prove, (except so far as proof may be waived by the pleadings,) every fact which the law requires to be proved on a question of probate in the ordinary Court: and consequently, *as to every* fact necessary *to authorize the probate of a will in a County Court*, and not admitted by the pleadings, the *onus probandi* devolves on the party claiming the recorded paper to be the testator's last will. Whatever may be the form of the issue, he, as to every *such* controverted and essential fact, holds the affirmative on the trial before the jury; because he must, in the first instance, prove such of them as are not admitted. A negation of any or of all of these facts by the complainant, in an affirmative form, cannot change the legal attitude of the parties on the trial; for, in whatever form he may dispute a fact indispensable to probate, he thereby denies or fails to admit it, and of course, it must be proved by the other party. Thus, if the complainant allege that the paper was not legally published as a will, he would not thereby assume on himself the burthen of proving that negative affirmation in the first instance. The effect of such an allegation would only be a denial of pnblication, and a requisition of sufficient proof of it. So, if he allege that the testator had *not* a disposing mind, or that he *was* of unsound mind, the

legal effect of the affirmation would be a *denial* of sufficient mind to make a will, and the party insisting that he had a disposing mind would hold the affirmative of the issue, and have to prove it. In such an issue, in such a case, whatever might be the form of it, the party affirming the indispensable fact of soundness of mind, takes on himself the burthen of proof: 1 *Starkie on Evidence*, 376, and the cases cited in note 1.

It must be evident that if it be the duty of a party to prove *a will*, he must prove that the testator had a disposing mind, if *that fact be not admitted:* such proof is expressly required by the statute, and we are satisfied that, in this case, the probate in the County Court was not sufficient *prima facie* evidence to throw the *onus* on the party filing the bill. If it be such evidence and entitled to such effect, then the party filing the bill, would, in every case of controversy, have to commence the proof on the trial and would, therefore, be entitled to the closing argument to the jury, upon an issue in any form, as to a fact necessary to the probate or rejection of the paper which had been recorded as a will; and if the probate in the County Court be not, *prima facie,* sufficient evidence of the validity of the will, then, as to every fact necessary for the probate of it in the first instance, the burthen of proof, except so far as proof be waived by the pleadings, would devolve on the party asserting it to be the will, on the trial of an issue involving such fact or facts, in any form. But, as already suggested, not only has this Court decided that, in such a case as this, the probate in the County Court is not alone sufficient evidence, but the statute itself, when its tenor and objects are considered, leads, as we think, to the same conclusion, by showing that the bill is to be filed, not to impeach the probate, but to "*contest*" the validity of the will as it might have been contested in the first instance, in the County Court, or on a writ of error to this Court, on a full trial, (but by a jury,) upon such proof and in such *order* as would have been proper, had the same party elected to appear in the County Court or in this Court, and by contesting the will, throw on the party asserting

*Proof of a will in a Cty. Court, is not sufficient, prima facie, in case a bill is filed contesting the will, to throw the burthen of proof on the complainant.*

Rogers, &c.
*vs*
Thomas *et al.*

A comprehensive issue simply affirming on one side, that the contested paper is the last will of the decedent, and denying that general affirmation on the other side, would more comport with the letter of the statute than any more restricted issue. *Argu.*

its validity, the burthen of first proving it fully and finally as between the parties litigant.

A comprehensive issue simply affirming on one side, that the contested paper is the decedent's last will and denying that general affirmation on the other side, would certainly be more conformable with the letter of the statute than a more restricted issue embracing only controverted facts, the decision of which would determine the same ultimate question. But the statute does not prescribe the form of the issue; it only determines its character and effect. If only one essential fact, (testamentary capacity for example) be controverted, any form of issue that would present that isolated question for trial by the jury, might be substantially good under the statute, because, in its legal effect, it would be undoubtedly sufficient for trying "whether the writing produced be the will or not"—for if the decedent had the *animum testandi*, all other facts necessary to prove it to be his will having been admitted, it certainly was his will—and it as certainly was not his will if he had not a disposing mind at the time of publication.

As no precise form of issue is prescribed by the statute, to try the validity of a will; if only one essential fact be put in issue, (all others admitted) it is still the duty of defendant to establish that fact, such special issue would not be deemed immaterial or illegal.

Such a special issue, therefore, should not be deemed either immaterial or illegal. Nor could it, by any form of words, change the attitude of the parties as to the burthen of proof or the closing argument to the jury; for whatever might be the form of the issue, the party claiming the contested paper to be the will, would hold the affirmative and should be required first to offer proof, as to every controverted fact necessary to the probate of it. Thus, in *Massachusetts*, on an appeal from a Probate Court, an issue having been directed to try the soundness of the testator's mind, the party contesting the will pleaded that *he was of unsound mind*, and the other party replied that he was of sound mind, and yet the Supreme Court properly and unanimously decided that the party asserting the will and alleging testamentary capacity, held the affirmative of the issue: *Blaney* vs *Sergent*, 1 *Mass. Rep.* 335.

The statutory provision authorizing the filing a bill contesting

In such a case as this, therefore, the form of an issue, *necessarily involving a testamentary question only*, cannot be so material to either of the parties as to justify a

reversal for any presumed prejudice to either of them. And therefore, it was deicded in the case of *Singleton's will*, 8 *Dana*, 316–17—and we still believe correctly, as to that point—that there was no available error in such a special issue as that which was formed and tried in this case. But in that case the Court seems rather inadvertently to have considered the probate in the County Court as *per se*, sufficient *prima facie* evidence to throw the *onus* on the party filing the bill; not then as now, considering the statutory proceeding by bill as virtually opening the question of probate to be tried by a jury, as an original question *between the parties*, for had not the Court then contemplated the bill as intended merely to impeach the probate to be considered, like a bond, good until the contrary should be shown, it could not have said, as it did, that "as all persons are presumed to be sane until "the contrary is shown, it devolved on the complainants "to make out, by proof, the insanity or undue influence "alleged;" upon that hypothesis the burthen of proof would have devolved on the complainants, under any form of issue involving the question of a disposing mind; and it was upon this assumption alone that the affirmative was, in that case, conceded to the party contesting the validity of the will.

In this case the form, as well as the legal effect of the issue as tried, imposed on the appellant the burthen of proof, and therefore entitled his counsel to the opening and closing speech before the jury—for he pleaded affirmatively and generally, that the contested paper was the last will of Joseph Rogers, deceased, and the appellees specially traversed that general averment, concluding to the country—whereby the affirmative of the matters in issue was indisputably assumed by the appellant: 1 *Chitty on Pleading.*

We are unable to perceive why the Circuit Judge directed a restricted issue, and refused to permit one more comprehensive. But still, as he did not thereby essentially change the attitude or rights of the parties, we cannot reverse his decree on that ground alone.

The struggle in the Court below, about the form of the issue, may indicate a belief, by the Court and the Coun-

Rogers, &c.
*vs*
Thomas *et al.*

the validity of a will virtually opens the question of probate to be tried by a jury, as an original question between the parties.

Where the issue to try the validity of a will is an affirmation by 1 party, that the contested paper contains the true last will of decedent, and that affirmation is generally or specially traversed by the other party, the issue is formed, and the party in the affirmative has a right to open and conclude the argument to the jury.

ROGERS, &c.
vs
THOMAS et al.

sel of the parties, that the form adopted entitled the appellees to the last speech. And if the Circuit Judge refused that right to the appellant's Counsel, as orally suggested in this Court to have been the fact, there was, therein, error to his prejudice. But the record, as exhibited to us, does not show that his Counsel was not permitted to close the argument to the jury, or that they did not in fact do so.

We should hesitate, therefore, to reverse on the first point alone.

*Slaves who purport to be emancipated by a will which has been proved in the County Court, are necessary parties to a bill filed, contesting the validity of such will.—And an agreement of record to waive all objections as to parties, does not imply that those who are not made parties have waived the necessity of their being made so.*

II. Two slaves, emancipated by the contested document, were not made parties. They were necessary parties, whose rights cannot be concluded by the verdict and decree between other parties. One of the chief objects of such a procedure by bill, was to settle finally and conclusively, all litigation as to a contested will; and it is the Chancellor's duty in such a case to require all persons interested as heirs or devisees to be made parties before he permits a final trial or renders a final decree. Endless litigation and confusion might result from permitting a decree to stand, which cannot conclude all persons directly interested in establishing or invalidating the will. This is not always a matter of compromise between such persons as shall happen to become parties. It is a matter of public policy, essentially affecting the end of litigation in Chancery, especially in such a class of cases as this, in which it is necessary for effectuating the end of the 11th. Sec. of the Statute.

An ambiguous agreement on the record cannot be understood as certainly importing even that the *appellant,* who was a defendant below, *consented* to waive objection to parties. The entry purports that the *complainants* only waived all benefit of question or time as to parties.

This does not necessarily imply that the *defendants* agreed to waive, on the final trial, all objection for want of necessary parties. But if it did, the radical error in trying the case and rendering a final decree when all essential parties were not before the Court, was not thereby cured.

It does not appear that the infant heirs of *Richard Rogers,* deceased, were regularly before the Court, by a

guardian *ad litem.* But as they are evidently interested against the will, and would be benefitted by the decree as rendered, we might not feel it to be our duty to reverse for that defect in the preparation.

But the interest of the pretermitted persons of color is against the decree and may be, to them, very important.

And therefore, it is our opinion that the decree should be reversed for want of parties, and especially as it may be probable that the appellant's counsel were improperly deprived of their right to conclude the argument before the jury, and, as also (if the record before us contains all the evidence) there may be reason to doubt whether the Circuit Judge did not err in overruling the motion for a new trial.

It is, therefore, the opinion of this Court that the decree of the Circuit Court be reversed, the verdict set aside, and the cause remanded for further proceedings and trial.

*Clay and Wickliffe* for appellants: *Owsley and C. S. Morehead* for appellees,

