Wilder, J.
Although other errors are assigned upon the record, three only are relied upon in argument by the counsel for the plaintiffs in error. It is claimed by them that the court below erred:
1. In admitting improper evidence, viz: The will, and the order of probate.,
2. In refusing to instruct the jury as requested by the contestants ; and,
3. In their instructions as given to the jury.
The first error assigned rests upon the same assumed ground as a portion of the second, and they will, therefore, be considered together.'
The first, second, third, and tenth instructions requested are as follows :
1. “ A will to be valid, must not violate the act to restrain the entailment of estates.
2. “ The trusts in the paper purporting to be the will of John Mears, are contrary to the act to restrain the entailment of estates, and void, and the jury may find the whole will void, if they believe that these trusts constituted the main design and object of the testator in making the will.
3. “If the will can not have the operation which John Mears intended, in consequence of his mistaking the legal effect of the terms used, the jury may, for this reason find, if they believe such to be the fact, that the paper writing is not the will of John Mears.
10. “ That the trusts declared in the will created a perpetuity beyond the period allowed by our law; that the trusts being void in part, are totally void, and if the testator was not aware of this, the will is void.”
These instructions were refused. Did the court err in such refusal ?
The claim of the plaintiffs in error is, in substance, that the will contains certain devises of real estate in trust, with limitations more remote than are permitted by the act to restrain the entailment of real estate ; that the entire will is, therefore, void; that the question was proper for the jury on the issue *95 made ; and that they should have found the -writing not to be the will of John Mears.
The question of the validity or invalidity of the devises in trust, contained in the will by reason of their supposed too remote limitations, has been elaborately, and with much ability, discussed by the counsel upon both sides ; but, as from the view we take of the case, it is unnecessary, and indeed improper for us to determine that question, we forbear to do so.
Assuming that those devises were invalid, did it result, as a consequence, that the whole will was void? The will contained bequests and devises of unquestioned validity. Because other devises were invalid, ought such invalidity to destroy those which were unquestionable ? We have been referred to no case where it has been so held, and we see no sound reason for adopting such a rule. “ A will may be valid in part, and void in part, as to its provisions.”
But, was the construction of the different devises contained in the will, a proper subject for the consideration and determination of the court and jury, in passing upon the issue tried before them ?
The act relating to wills, and the act defining the jurisdiction, and regulating the practice of probate courts (S. & C’s. Stat. 1615, 1212.) prescribe, with particuliarity, the manner in which wills are to be admitted to probate. Section 19, of the first-named act then provides that, if no person interested, within two years after probate had, appears and contests the validity of the will, the probate shall be forever binding, saving to persons under disability, the like period after the respective disabilities are removed. Sections 20 and 21 then provide as follows :
Seo. 20. “ The mode of contesting a will shall be by bill in chancery, which may be filed in the court of common pleas of the proper county, within said two years, by any person interested in the will or estate of the deceased.”
Sec. 21. “ In such suit in chancery, an issue shall be made up, whether the writing produced be the last will of the tes *96 tator or not, which shall be tried by a jury, whose verdict shall be final between the parties, unless the court shall grant a new trial, or the cause be appealed to the district court.”
Under these sections the action was commenced, and the trial had, in the court below.
In England there are two modes of proving a will of personalty in the proper court of probate: 1. “In the common form.” 2. “ In the form of law,” or “ solemn form,” or “per testes.” The first, like our ordinary mode of probate in the probate court, was ex parte, the last was inter partes, upon citation of all persons interested, and upon full proof by witnesses, for and against the will. It is manifest that our legislature in its provisions for the contest of a will by bill in chancery, above cited, simply designed a mode of bringing up the will for final probate or rejection, all persons interested being made parties, and having an opportunity of being heard with all their proofs for and against the will, corresponding nearly with the mode of probate in England, “in solemn form” or “per testes.” The jurisdiction exercised in all such cases by the court and jury is virtually that of a court of probate. 1 B. Mon. 390; Hambertin v. Terry, 7 Howard’s Miss. R. 148-9; Coalter’s executor and others v. Bryan and others, 1 Grattan, 79, 80; Small v. Small, 4 Greenleaf, 225,
There is a marked distinction between courts of probate and courts of construction and administration — between their jurisdiction and the object of their investigations. In Coalless executor and others v. Bryan and others, 1 Grattan, 76, Baldwin, J., says : “ The jurisdiction of a court of probate differs from that of other civil tribunals in this, that its province is not to ascertain and enforce the rights of property, but to establish, preserve, and perpetuate some important muniment of title.”
The jurisdiction of the court of probate is limited to the probate of the will, its construction is to be left to other tribunals. In Small and others v. Small, the court say: “ So far as 'the construction of the will, or any particular clause in it, may be a subject of judicial inquiry, it is one of purely com *97 mon law jurisdiction, and not a question examinable by us sitting as the supreme court of probate.” So in the case of Jolliffe v. Fanning and Phillips, 10 Rich. (S. C.) Law Rep. 198, where the plaintiff was seeking the probate of the will of Elijah Willis, certain bequests in the will were claimed to be void by reason of being in violation of a statute of the state The court say: “ Upon the question of probate the inquiry is whether there be propounded a valid will, not whether certain of its provisions are against the law, statute or common, or against any such state policy as a court may notice. These last considerations belong to construction and administration, and, however they may operate to explode certain provisions, yet if enough remains to make a will or testament, the same is undoubtedly entitled to probate.” A similar doctrine was held in Lorieux v. Keller, 5 Clarke (Iowa) R. 196; Werkheiser v. Werkheiser, 6 Watts & Serg. 189, 190; Patterson v. Patterson, 6 Serg. & Rawle, 56.
In Werkheiser v. Werkheiser, above cited, the register’s court directed an issue to be made up, to be tried in the common pleas, whether David Werkheiser had made his nuncupative will, as was claimed by the party asking its probate. On the trial of that issue, the court was asked, among other things, to charge the jury, that the will contained but one bequest which was insensible and void and could not be carried out, and the plaintiffs could not, therefore, recover. The court omitted to answer this request. On error, the supreme court say: “.The court was not bound to answer this point. It was irrelevant. It is no reason for not admitting a will to probate, that its devises are obscure and uncertain. That is a matter for subsequent consideration between the devisees and legatees, or with the heirs at law and next of kin.”
The authorities seem to be uniform, and clearly establish the proposition that the construction of a will does not belong to a court simply invested with the power of probate.
W¿ are of opinion, therefore, that the court below, in the trial of the issue before them, could not be legally required, and that it would have been improper for them, to pass upon *98 the validity or invalidity of the devises in the will of John Mears which were questioned; and that they committed no error in their refusal to give to the jury the first,- second, third, and tenth instructions requested.
Tne ninth instruction asked was as follows :
“ That a testator must not only have capacity, but he must not, at the time of making his will, be laboring under a delusion, as to any subject, which may affect his judgment in making his will; that if the jury believe, that, at the time, he was under the belief, that his son John H. Mears had been guilty of burning the property of his father, that he was a drunkard and a gambler, when, in truth and in fact, he was not guilty of such burning, was not a drunkard or gambler, and he, the testator, was under a complete delusion on these subjects; and if he had not been laboring under delusion, he would not have made this will; then the will was not duly executed.”
This was refused, and the following given in lieu of that requested:
“There is another exception to general capacity, not amounting to idiocy or lunacy, which may require some observation. It is called partial insanity or delusion upon some particular subject. Delusion is generally regarded as essential to insanity, and this delusion may be so limited, be so confined as to the particular subject matter, that as to all others, and in other respects, the party is to be regarded as sane and competent. The act, therefore, which it is sought to affect on the ground of such partial insanity, must be traced to the morbid delusion, and shown to be the result of that delusion. And there must be delusion, for it would be a dangerous doctrine, that belief upon insufficient evidence, or upon mere suspicion, would constitute delusion in such a sense as to make out a case of partial insanity. The conception ought to be of something extravagant or unnatural, and the party should be incapable of being, or at least of being permanently, reasoned out of the conception. It must be a fancy which no proof or reasoning will remove.”
*99 The counsel upon both sides have elaborately discussed the principle involved in this charge, but we find it unnecessary to determine whether the same was therein correctly stated or not. After a careful examination of all the testimony supposed to have a bearing upon the subject of the delusion of John Mears, we are satisfied that there is nothing in the evidence either proving or tending to prove a delusion, such as in any proper or legal sense constitutes unsoundness of mind, an incapacity to make a will. The instructions asked and given, were upon abstract propositions, and whether right or wrong, lay no foundation for a reversal of the judgment.
The fourth instruction asked, in the following language, “ If a person benefited by a will writes it himself, or procures it to be written, this circumstance alone forms a just ground of suspicion, and calls upon the jury to be vigilant and jealous, and requires clear and satisfactory proof that the instrument contains the real intention of the testator,” is, upon its face, but another abstract proposition. We have, however, looked into the testimony for the purpose of ascertaining whether it made a case calling for such instruction, and we think it did not. There is no evidence in the record showing or tending to show that Daniel H. Mears, the person supposed to be specially interested in the will, wrote it himself, or otherwise procured it to be written, than by being the bearer of messages and instructions from the testator to the attorney by whom the will was written. Upon the general subject of undue influence, the court charged the jury as follows: “The will of a person generally competent, may be invalid when made under restraint — it would want what has been before termed the essence of the act, consent. The restraint must, therefore, be such as to show that the act had not the free consent of the testator, who must be both capable and free. There are many general remarks found in the authorities as to the character and degree of the restraint which will invalidate a will. The result may be said to be, that the tribunal called on to decide, looking at the circumstances of the particular case, and having evidence tending to show the exercise *100 of influence over the mind of the testator, and evidence that such influence did probably avail, must be satisfied that he acted under restraint and had not his will.” Of this charge thus given there is no complaint.
The fifth instruction requested, which I need not repeat, is also based upon some assumptions which we think there is nothing in the evidence tending to justify. It is further correctly answered, “ that the ordinary presumptions arising from the formal execution of a will, do not obtain in this state, the statute expressly providing that the order of probate shall be 1 prima facie’ evidence of the due attestation, execution and validity of a will” (S. & C’s. Stat. 1619). The usual and better practice is, for the propounders of the will, after having offered in evidence the will and the order of probate, and thus made a prima facie case, to rest. The contestants then offer whatever evidence they may have relating to' any or all the grounds upon which they seek to invalidate the will. The propounders of the will then offer their rebutting proof. The evidence thus being all before the jury, the court in their charge are not required upon this or that assumption, and in respect to this or that item of proof, to instruct the jury how the burden of proof may be changed from one side to the other. There might be no end to such assumptions, and confusion rather than a more clear apprehension of the just weight of all the evidence would he created in the minds of the jury.
■The sixth instruction requested and refused, was as follows : “ If the jury believe that Daniel H. Mears might have exercised dominion over John Mears, and Daniel- H. gained any advantage, it is to be presumed, until the contrary be proven, that undue influence was exercised.” Several authorities -are cited by counsel to support this proposition, but none sustain it, nor is the proposition sound, but is in conflict with the familiar maxims of the law, that fraud will not be presumed, and that every man is deemed to' be innocent until he is proven to be guilty.
The seventh instruction requested — as follows: “A party can retain nothing which he has gained, where, in consequence *101 df confidence reposed, he had it in his power to sacrifice, in a secret manner, for his own advantage, interests which he was bound to protect; and the jury may consider this principle, if there be any evidence in the case to which it is applied” — ■ as also the eighth; “That where evidence is"clear, showing faat a testator during his life, always expressed a determination to make an equal distribution among his children, and the will in question was made under suspicious circumstances, and while under the control, or subject to the influence of a principal devisee, the law requires those who propound the will, to prove a clear capacity in the testator, a full understanding of the terms of the will, and that he was under no improper influence or delusion” — are both subject to the objection that they are founded on unwarranted assumptions. It in no way appears, that Daniel H. Mears occupied any fiduciary relation to the other legatees or devisees, or that the will was contrary to the uniform previously declared intentions of the testator. There is the further objection, common to all, or to most of this series of instructions requested, and above alluded to, in respect to the fifth — they seek to shift the burden of proof from the contestants in opposition to the express provision of the statute, and to impose upon the court an impossible duty; — • to tell when, in view of all the evidence given, the burden of proof in respect to a particular issue, is transferred from one side to the other.
It is further claimed that the court below erred in the following portion of their charge to the jury. After stating to the jury, that the order of probate was prima fade evidence of the due attestation, execution, and validity of the will, the court proceeded as follows : “And you must be satisfied from the other evidence produced, that the writing is not the last will of John Mears, or you must find that it is. You will, therefore, look at the other evidence with that view, and if it fails to satisfy your minds, that the writing is not the last will of John Mears, you should say that it is. But if you are satisfied from such evidence, that the prima fade case, which is the effect given, by law, to the order of probate, has been *102 overcome, and that the writing is not the last will of John Mears, you should so say by your verdict.” The argument is, that inasmuch as the heir can not contest the will in the probate court, the proceedings in that court being ex parte, and the witnesses to the will seldom have much knowledge about it, beyond the fact that they signed it, and saw the testator sign it, or heard him acknowledge that he signed it, the order of probate ought to be regarded as the weakest kind of a prima facie case, and that when overcome by other evidence offered by the contestants, the writing stands, as before probate, unproved, and the burden of proof is changed, and thrown upon the propounders of the will. Cilley v. Cilley, 34 Maine R. 162; Crowningshield v. Crowningshield, 2 Gray, 524; Gerrish v. Nason, 22 Maine, 438; Knox’s Appeal, 26 Conn. R. 20, and Delafield v. Parrish, 25 New York, 29, 30, 31, are cited to sustain these views. These cases decide, that on the question whether a will shall be established, there is no legal presumption of the testator’s sanity. That is a fact to be proved, and the burden of proof rests upon the party proving the will. But in those states no such statute as ours appears to exist; and whatever the rule may there be, or in the ecclesiastical courts of England, in this state, on the trial of a contest of a will, by the express terms of the statute, “ the order of probate shall be prima facie evidence of the due attestation, execution, and validity of said will.” The necessary effect of this provision is to change the burden of proof in respect to each of these subjects, from the propounders or contestees to the contestants of the will. It there remains, the court and jury having thereafter only to determine upon all the proofs given in the case, where the weight of all the evidence lies. The court below, in their charge upon this point, but gave effect to the clear provisions of the statute.
After a careful examination of all the questions presented, and elaborately and. ably argued, we are of opinion that the court below did not err in their refusal to charge the jury as *103 requested, or in their charge, as given, or in any of the other matters assigned for error upon the record.
The judgment of the district court is, therefore, affirmed.
Brinkeri-ioee, C.J., and Scott, Ranney and White, JJ., concurred.