IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT, DECEMBER TERM, 1842.

## Boyer *against* Frick.

W. S.
4ws357
200  551
4ws  357
f220  174

A nuncupative will is good only when made in such extremity of the last sickness as precludes a written one.

ERROR to the Common Pleas of *Bucks* county.

This was an issue directed in the court below, to try the validity of a paper, purporting to be the last will and testament (nuncupative) of Gertrude Frick, deceased, in which George, Henry, Gertrude and Maria Frick were made plaintiffs, and Jacob, Eve and Maria Boyer, John Waltman and Magdalena Lessig, defendants. The plaintiffs were children of testatrix's husband by a former wife, a sister of the testatrix. The Boyers were children of another sister.

The plaintiffs proved that the testatrix was taken sick from a rupture, on Monday, 23d of May 1842, at her own house. The last time she sat up in bed was on the Wednesday morning following. On Thursday morning about 8 o'clock, she said that Henry and George Frick should make all her property into money and pay off the funeral expenses; that they should pay Magdalena Lessig for her trouble, and the overplus should be divided equally among the plaintiffs; that the Boyers should have nothing of the

(357)

[Boyer v. Frick.]

property, should inherit nothing, as they had never visited her. She called on two persons to be witnesses to her will, who made her no reply. At this time her understanding and senses were good. About noon she underwent an operation for hernia, after which she was weak but free from pain, and able to sit up if she chose, though forbidden to do so by her physician. On Friday she was easy and knew those about her, but was no better, though still able to sit up if she chose; spoke when spoken to, but not otherwise, according to one witness; but according to another, she also spoke when not spoken to. On Saturday noon she grew worse and unable to speak, and died about 6 o'clock that evening.

The substance of the evidence given by the defendants was, that the testatrix, while sitting up in a chair on the first day of her sickness, said she would like to make a will but she did not know how. On being told to make it when she pleased, she said she would like to make it to those children that waited on her. The Fricks then waited on her. On the evening of the operation she appeared very well, better than before, and continued so until Saturday.

The court charged the jury as follows:

" The 6th section of the Act of 8th April 1833, declares that ' every will shall be in writing,' &c. ' Sec. 7. Provided that personal estate may be bequeathed by a nuncupative will, under the following restrictions: 1. Such will shall in all cases be made during the last sickness of the testator, and in the house of his habitation or dwelling, or where he has resided for the space of ten days or more next before the making of such will, except where such person shall be surprised by sickness, being from his own house, and shall die before returning thereto. 2. Where the sum or value bequeathed shall exceed one hundred dollars, it shall be proved that the testator, at the time of pronouncing the bequest, did bid the persons present or some of them, to bear witness that such was his will, or to that effect; and in all cases the foregoing requisites shall be proved by two or more witnesses who were present at the making of such will.' Nuncupative wills must be received with great caution, to prevent fraud. The jury have heard how the testatrix made this alleged will on Thursday morning the 26th of May 1842. She was then in pain from rupture; an operation was to be performed on her about noon of that day. After the operation she became easier, continued so that afternoon, and all day Friday—was very weak on Saturday morning—by noon was unable to speak, and died about 6 o'clock that afternoon. She never sat up in bed, being so directed by the physician; after the will made, one of the witnesses thinks, she was able to sit up a little.

Have the requisites of the statute been proved? Was she competent to make a will? Were there two witnesses who agree in their details of the will? Were they required by the testatrix to

[Boyer v. Frick.]

be witnesses? Was it in her last sickness? Was it in her own house? The jury have heard the evidence. We agree that nuncupative wills are not favourites of the law, nor ought they to be so. And we agree that every requisite of a written will, as to capacity, &c., is necessary. The witnesses must concur as to the will. They cannot speak English, and all their evidence has been obtained through an interpreter. Do they not agree? Their testimony here is in accordance with that given before the register, on the 13th of June, 17 days after the will was made, and 14 days after the death.

The strong ground taken against this will by the defendants is, that this nuncupative will was not in the last sickness of the deceased, and the case of *Yarnall's will* is relied on. Without giving a positive direction either on the one side or the other, we submit it to you. You must be satisfied it was the last sickness. Did not the rupture take place on Monday? She made the will before the operation performed on Thursday—she was advised by the physician to keep quiet — she did so. This is the strongest circumstance in favour of this will. She was easier and might have had a written will on Thursday afternoon, or on Friday ; it was not done. The defendants further contend that this will was not made *in extremis,* from the evidence, and that hence the will cannot be proved. If you find it the last sickness, we think there is less danger of fraud in a case like the present, where the testatrix was confined and contemplated an important operation to be performed on her by a surgeon, and she died so soon after, than in a case of *extremis.* We think to instruct you on the facts disclosed that the nuncupative will cannot be supported on these grounds, would be repealing the statute, and we submit to you, was this nuncupative will made in the last sickness, and is it complete, and does it possess all the requisites of the statute? You are the judges of the credit of the witnesses. If improper influence was used by the devisees to obtain the will, it ought to be set aside. With these instructions we submit the case to you. If this will is established, it will only operate on the personal property of the deceased."

The defendant excepted to the charge, and assigned for error :

1. The court did not charge the jury as contended by the defendants, that the will was not made during the last sickness of the testatrix, and also, while she was not *in extremis.*

2. The court erred in submitting to the jury as a question of fact, whether the will was made in the last sickness of the testatrix, and while she was *in extremis.*

3. The question whether the testatrix was *in extremis* at the time of the making of the will, being a question of law, the court should have charged the jury that, under the evidence in this case, the testatrix was not *in extremis* at the time.

4. The court misled rather than instructed the jury in charging

as follows: " the defendants further contend that this will was not made *in extremis* from the evidence, and that hence the will cannot be proved. If you find it the last sickness, we think there is less danger of fraud in a case like the present, where the testatrix was confined and contemplated an important operation to be performed on her by a surgeon, and she died so soon after, than in a case of *extremis.*"

*Wright*, for plaintiffs in error, cited 4 *Rawle* 65; 20 *Johns.* 503; 5 *Whart.* 396; 4 *Am. Dig.* 479.

*Dubois, contra,* referred to 1 *Smith's Laws* 40; 6 *Serg. & Rawle* 496; 20 *Johns.* 304; 5 *Ib.* 312.

The opinion of the Court was delivered by

GIBSON, C. J.—Nuncupation is not a matter of right, but of special indulgence, as a last resource. It is an exception to the rule of the statute, which has no foundation but necessity, and which, as it affords great temptation to the perjury and fraud which it was the aim of the leading provisions to prevent, cannot be resorted to as a measure of mere convenience. It is true that the statute, speaking in general terms, allows it in the last sickness, without specifying the degree of its urgency; but from the clause which requires the act to be done " in the house of the testator's habitation or dwelling, except where such person shall be *surprised* by sickness" abroad, we may safely infer that the compilers of the statute contemplated a state of illness so violent as to deprive the patient of power to comply with the general regulation. There could be no reason to license the making of a verbal testament in the last, rather than in any previous sickness, where the danger to be feared from misapprehension or corruption of the witnesses, might be avoided as readily in the one case as in the other. Why the compilers did not define the emergency which dispenses with the signature merely, in the very words they used to define the emergency which dispenses with writing altogether, it would be hard to conjecture, were it not for the fact that the words " last sickness," used in connexion with the subject of nuncupation in the former statute also, had received a judicial construction in *Yarnall's Case* (4 *Rawle* 65), which it may have been thought impolitic to disturb. But the difference between these and the words "*extremity* of last sickness," used in the present in relation to an omission of the signature, was certainly not intended to mark a difference of degree in the urgency of the case; for there is no room for a difference in reason, because where there would be time to affix the signature, there would be time also to write down the few and simple provisions of such a will as may be carried in the memory of witnesses. But what settles the principle is the precedent in *Yarnall's Case*, in which

[Boyer v. Frick.]

we ruled, on the authority of Chancellor Kent's opinion in *Prince* v. *Hazelton*, (20 *Johns.* 503), and indeed in coincidence with the scope of the statute, that a nuncupative will is good only where it has been made in such extremity of the last sickness as precluded a written one. The principle of that decision, which passed under the eye of the compilers without emendation, established a particular construction which is not to be unsettled by any accidental difference of expression in an analogous part of the statute. Had they designed to change it, they would have been explicit. A nuncupative will is to be sustained, therefore, only when it has been made in a case of the last necessity. In the words of the Chief Justice of Connecticut, quoted in *Yarnall's Case*, was' the decedent in this instance *in extremis*, and without time or opportunity to make a written testament?

The declaration of her will was made on a Thursday, in expectation of a surgical operation for strangulated rupture, under which she had laboured from the preceding Monday, and which terminated fatally on the following Saturday. The operation was subsequently performed, and the surgeon directed her merely to observe a recumbent posture. She was easy during the intervening Friday, but seldom spoke when she was not spoken to. Such are the principal features of the case disclosed by the witnesses for the will.

Now, taking for granted that the subject of setting her house in order, occurred to her for the first time on the morning of the operation, which is the most favourable view of the facts for the plaintiffs, still she had ample time to make a written will before the surgeon arrived. It would have taken very little more time to write down the testamentary direction she committed to the witnesses to turn the property into cash, and divide it after payment of debts among Frick's children, than it would have taken to have the paper signed with her name by her own hand, or by the hand of another in her presence, had it been written already. All this she was bodily and mentally able to do; and why was it not done? The necessity of the operation was not so instant as to preclude everything else, for the surgeon was not in attendance. The declaration of her will was made at eight o'clock in the morning, and the operation was delayed till noon; so that there was an interval of four hours, during which she had the entire use of her faculties, and which was sufficient for a more complicated arrangement than the one she attempted. It is unnecessary to inquire whether she could safely have made a written will at any time after the operation was performed; for the plaintiffs' own evidence shows distinctly that such a will might have been made before it; and it therefore lays no foundation for a nuncupative one. If the decedent was dissuaded from having her will reduced to writing by a belief that a verbal one would do, she committed an incurable error. In *Stricker* v. *Groves*, (5 *Whart.*

[Boyer v. Frick.]

386), want of the testator's signature was not allowed to be supplied by proof of his inability to hold a pen, and of repeated refusals by others to sign the paper for him, induced by a misapprehension of the law. That case had a more imposing claim to indulgence than the present one has, inasmuch as the testator had done all that was in his power to do; yet it was properly said that the frustration of an effort to make a will by the folly and perverseness even of those whom the testator has called to his assistance, is without remedy. The requisites of the statute must be complied with according to its spirit. On the plaintiffs' own evidence, then, the nuncupation was invalid; but taking into the case the evidence on the part of the defendants, we find the decedent impressed with the necessity of making her will on the first day of her illness. Thus she appears to have had three whole days at her disposal, a period much more than adequate to the making of any written will. But the jury ought not to have been instructed, in relation to either state of the case, that a nuncupative will is valid when made in the last sickness, though the decedent were not *in extremis*.

Judgment reversed, and a *venire de novo* awarded.