## Werkheiser *against* Werkheiser.

This court will not inquire whether an issue was properly directed by the Register's Court to the Common Pleas on a writ of error to the latter Court; they can only do this on an appeal from the Register's Court.

The Common Pleas may try such issue, though the defendant resist the making of the issue and refuse to plead.

Where a decedent was able to come down stairs to receive and converse with visitors and to walk in the street, and died the next day from a rupture of the lungs; *held* not to be such extremity of last sickness as authorized a nuncupative will under the 6th section of the Act of 8th April 1833.

The refusal of a new trial by the court below is not inquirable into on a writ of error.

It is no reason for not admitting a will to probate that its provisions may be obscure and uncertain.

A plaintiff in error cannot complain of the court's not answering a point which it was bound to answer against him.

ERROR to the Common Pleas of *Northampton* county.

This case came before the Register's Court on an appeal from the register. Sarah Werkheiser and Salome Werkheiser appeared before that court, the former alleging that David Werkheiser had made his nuncupative last will and testament, and the latter denying the same. Sarah, as the legatee named in the will, applied to the court to award an issue to the Common Pleas to try the questions of fact in the cause. Salome objected to the granting of the issue, that she did not deny any matter of fact stated in the evidence of Sarah, and that the question of fact upon which the issue was asked was not stated by Sarah. The court overruled the objection, and directed an issue to the Common Pleas, which court made up a feigned issue between Sarah as plaintiff, and Salome defendant, to try whether or not David Werkheiser, shortly before his death, made his nuncupative last will and testament, as set forth in the papers presented to the register. Salome refused to sign this issue, and protested against it as unauthorized by law, and as covering all questions to be decided by the Register's Court; and excepted to the form and substance of the issue, and the power of the Common Pleas to order it.

On the trial of the issue, Dr Field testified that he saw the decedent on the 26th of January 1842, walking in the street, in a very weak condition; and afterwards saw him sitting at his window, when he called the witness in, who told him he could not survive long. The decedent then stated that when he died, he wished his property to be divided as follows: That he wished his sister Sarah, with whom he then lived, to have the principal part of all he was worth, and the balance he wished to give to a poor sister, who had

[Werkheiser v. Werkheiser.]

several children; that his mother should not have a cent of his property. During this conversation, no one else was present. On the 28th of January, about 2 o'clock P. M., the testator died from a sudden attack of congestion of the lungs, caused by a rupture. Another witness called on the decedent the day before his death, when the latter came down and unlocked the door, and both went up stairs. The decedent said he was weak and did not feel good; that after his death all he had should go to his sisters Sarah and Catharine; his mother should never have a cent; and he mentioned that he had spoken to Dr Field. No one else was present at this interview but a boy ten years of age. Another witness saw him walking the street the day before he died, and conversed with him; and thought he saw him in the street about 10 o'clock of the day he died.

Several other witnesses had conversations with the decedent in the latter part of December 1841, and on the 1st of January 1842, in which he said his property should go to his sisters Sarah and Catharine; that his mother should not have a cent of it; and that Catharine's share should be preserved for her children.

The defendant requested the court to charge:

1. That the alleged nuncupative will not having been made in the presence of two witnesses called on to attest it at one and the same time, and no two witnesses having testified to the same occasion of publishing the alleged will, the plaintiff cannot recover.

2. That if the decedent had full opportunity to make a written will, the plaintiff cannot recover.

3. That the will contains but one bequest, which is insensible and void, and cannot be carried out; and the plaintiff cannot therefore recover.

BANKS (President) charged the jury as follows:

The Act of Assembly in relation to nuncupative wills, requires that they should be made during the last sickness of the testator; that they should be proven by two witnesses who were present at the making of such will; and that the testator did, at the time of making the same, bid the persons present, or some of them, to bear witness that such was his will. These principles of law are applicable to and must govern this case. Was this alleged will made during the last sickness of the testator? Last sickness means a point of time in sickness approaching so near to death, as to leave neither reasonable time nor opportunity to the deceased to have made a written will during the remainder of his life. This is a fact for your determination. Evidence has been given of when this alleged will was made, and of the nature and stage of the disease, the condition of the body and mind of the deceased at the time, and how long he lived afterwards. Was, then, this alleged will made during the last sickness of the deceased? If it was not, it is not valid as a nuncupative will.

Have the witnesses agreed in their testimony as to the disposi-

[Werkheiser v. Werkheiser.]

tion of property made by the deceased ? It is necessary that the two witnesses should agree as to what the will is; and unless two witnesses have so agreed in this case, there is no nuncupative will. You have heard all the testimony, and from it you will decide this fact. Has the nuncupation been proved by the requisite number of witnesses ? This point has been much controverted by the counsel in their arguments to you and us. That a person should declare a disposition of his property *in extremis* in the presence of one witness, and bid him bear witness that such was his will, and that being done, would direct him to go and request a third person whom he named to come immediately and be a witness to his will, and this person having come he would repeat the same things to him as to the disposition of his property that he had to the other, and would also bid him bear witness that such was his last will, would appear to be very satisfactory and conclusive evidence that the man wished to make his will. It would indeed be strong evidence of an effort on his part to make a will, and would go as far to satisfy the minds of men as to the truth of the facts testified to, as if both witnesses had been present at one time, and had testified to the same facts as having taken place in their joint presence. To my mind it would be more satisfactory, for it would be repeating the same disposition twice instead of but once. It is not that proof and ceremony that would satisfy your minds or mine, that we are to follow as our guide in determining in this case whether there is a nuncupative will or not. In the absence of law, most men would be satisfied that the intestate had made a will, and feel a strong repugnance to the idea that his property should take any other direction than that which he had given it. It is not worth while, however, to spend time upon this point; for our Legislature in their wisdom have provided that every nuncupative will shall be made in the presence of two witnesses, who were present at the same time and called upon at the same time to attest the will. This settles the law and ends the question, and the points of law made by the defendant are therefore correct. Unless there were two witnesses present at the same time when the alleged nuncupative will was made, and called upon at the same time to attest it, there is no will. The law requires this, and you cannot dispense with it. The facts are for your decision.

The defendant excepted to the charge. The jury found for the plaintiff, and that the following was the nuncupative last will and testament of David Werkheiser : " I give and bequeath, and it is my will, that all my money and other property shall be given to my two sisters, Sarah and Catharine, and that my mother shall have no part thereof. The principal part of my property to go to my sister Sarah, and the balance to be secured for my sister Catharine and her children, so that her husband cannot spend it." The defendant moved for a new trial, which the court refused.

[Werkheiser v. Werkheiser.]

Errors assigned:

1. That the Common Pleas had no jurisdiction; there being no dispute upon any matter of fact which the Register's Court were authorized to refer to them.

2. That as defendant resisted the making of the issue and filed no plea, the case was not at issue and was improperly tried.

3. The court erred in submitting to the jury whether the alleged will was made during last sickness, when there was no evidence of such last sickness, in the legal acceptation of the term, at the time of making the will.

4. In submitting to the jury whether the two witnesses had agreed in their testimony as to the terms of the will, when there were no two cotemporaneous witnesses as required by law.

5. The charge as to what the law was and what the law ought to be, was contradictory and calculated, to mislead the jury.

6. The court erred in telling the jury that the facts were for their decision, when the only question was a question of law, and no facts were controverted.

7. In totally omitting to answer defendant's 3d point.

*Reeder*, for the plaintiff in error.

1 and 2. The Register's Court had no authority to direct an issue in this case, and the Common Pleas had no jurisdiction to try it. The depositions to sustain the will were all taken before the register, who refused probate, and an appeal was taken to the Register's Court, where no other evidence was taken than the depositions. We admitted all the facts contained in the depositions; there was no fact whatever disputed. The Register's Court were bound to decide on the law arising on the facts, and to declare the will not proved according to law. The Act of 15th March 1832, sect. 41, provides for an issue only to try matters of fact, and they cannot direct an issue to try matters of law before a jury. The effect of such a proceeding is to oust this court of its appellate jurisdiction over the probate. The court could not compel us to plead against our will.

3. But it is clear this was not a nuncupative will within the Act of Assembly. There was no evidence of last sickness, according to its legal meaning, the party being able to walk about and go out of doors, and in a situation to make a written will. It is settled, that to justify the making of a nuncupative will, the party must be in the extremity of last sickness, so that he has not time or opportunity to execute a written will, and it lies on the party setting up a nuncupative will to show that. *Yarnall's Will*, (4 *Rawle* 46); *Boyer* v. *Frick*, (4 *Watts & Serg.* 357); *Prince* v. *Hazleton*, (20 *Johns.* 503).

4, 5, 6. The court should have instructed the jury to find for

the defendant, instead of leaving it to them to find the facts, none of which were disputed.

7. The court are bound to give a distinct and definite answer to points put.   *Geiger* v. *Welsh*, (1 *Rawle* 349); *Freeman* v. *Pennock*, (3 *P. R.* 318).   If the point was relevant to the issue, they were bound to answer, even though the answer would have been against the defendant.

*J. A. Dunlap* and *Brooke*, contra.

1 and 2.   On this writ of error this court will not inquire whether the issue ought to have been directed.   That could come in question only by appeal from the Register's Court, and cannot be examined collaterally.   The effect of this error, if allowed, would be to obtain from this court the award of a new trial.

3. The court decided the law and left the facts to the jury, which was right.   They were not bound to take the case from the jury and decide on the credibility of witnesses or other matters of evidence.   The cases cited do not apply.   In *Yarnall's Will* the *animus testandi* was absent, and the case was prior to the new code. In *Boyer* v. *Frick* the disease was hernia, which does not always prove fatal.

4, 5, 6.   The court did not leave any distinct fact to the jury, but only recapitulated the evidence and proceeded to state the law. The whole charge must be taken together: and the court did all the defendant asked, except to take the case from the jury.   Indeed, they did even that, by saying all the defendant's points were with him.

7. The court are not bound to answer a point which is plainly against the party proposing it.

The opinion of the Court was delivered by

SERGEANT, J.—The 1st and 2d errors assigned are inapplicable to the case as now brought before us by writ of error from the Court of Common Pleas.   The only mode of inquiring whether the issue was properly directed would be by appeal from the Register's Court, who had full jurisdiction to direct an issue, and the Court of Common Pleas could not refuse to try it.   We cannot inquire collaterally into the act of the Register's Court in directing this issue. Nor was it important in the Common Pleas that the defendant resisted the making of the issue or refused to plead.   The issue was made up by the Register's Court in due form, and sent to the Common Pleas, and that was sufficient for them to proceed upon.

3. We think the 3d error fully sustained.   The proper construction of this Act of Assembly was settled in *Boyer* v. *Frick*, (4 *Watts & Serg.* 357); and in *Yarnall's Will*, (4 *Rawle* 46), where it was decided that the intent and object of the Legislature in passing the Act must be taken into view in interpreting the words "last

[Werkheiser v. Werkheiser.]

sickness," and that the object of the Act was to enable those only to make nuncupative wills, who by reason of the extremity of last sickness were unable to make written ones. That such was the case here there was not a particle of evidence to prove. At the time of the last conversation deposed to, the testator was able to go down to the door, return up-stairs and converse; and he complained only of weakness and not feeling well. Another witness thought he saw him, on the same day, walking in the street. On the next day a rupture of the lungs took place, and he died. The other conversations relate to a previous period of time. They all, it is true, go to show the intent of the decedent. But this is not enough. Every one who undertakes to make a testamentary disposition of his property, must conform to the law regulating such disposition; and if he does not take care to do so, the law cannot uphold it. Now the Act of Assembly requires that all wills shall be in writing, signed by the testator, and permits a verbal or nuncupative will only in extreme cases, where the party by the effect of disease is incapacitated from making a written will. To sanction a verbal will, where there is time to make a written one, would tend to the introduction of all the doubt, uncertainty, litigation, fraud and imposition which uniform experience has shown attend the allowance of verbal wills, in ordinary cases. It was error, therefore, in the court to leave to the jury without any evidence, to decide whether the alleged nuncupative will was made during the last sickness of the testator, when taking all the plaintiff's case as presented in the depositions to be true, there was no evidence whatever to show that it was made in such an extremity of last sickness as the Act of Assembly requires: and it was the right of the defendant to have from the court, in answer to his second point, an instruction to the jury to that effect.

4. The subject of this error does not seem material. For notwithstanding the court leave it to the jury to say whether two witnesses had agreed in their testimony, yet they afterwards very explicitly tell the jury that the legislative provision requires that a nuncupative will shall be made in the presence of two witnesses, who were present at the same time and called upon at the same time to attest the will, and that unless that were the case there was no will. The defendant cannot complain, therefore, of this part of the charge on the law, for it was all in his favour. His only ground of complaint would be that the court did not grant a new trial: but that is a part of the proceedings of the court below which is not inquirable into here on writ of error.

The 5th and 6th errors have been already substantially noticed.

7. The court were not bound to answer this point. It was irrelevant. It is no reason for not admitting a will to probate that its clauses and provisions may be obscure and uncertain. That

[Werkheiser v. Werkheiser.]

is a matter for subsequent consideration in contests between the devisees and legatees, or with the heirs at law and next of kin. The plaintiff in error cannot complain of the court's refusing to answer a point which they were bound to answer against him. Writs of error are only for the relief of those who are aggrieved by the acts or omissions of the court.

Judgment reversed, and a *venire facias de novo* awarded.