Daniel, J.
This is an effort to set up, as a nuncupative will, an instrument which was executed by a testatrix in her last sickness, as a written will, with all the ceremonies requisite to the validity of a written .will, with the exception that the attestation of the witnesses was made not in the presence of the testatrix.
Everything has been done as well by the testatrix as by the witnesses, which either she or they supposed it necessary for her or them to do, in order legally to declare and certify her testamentary purposes in the form of a written will.
The defect in the instrument designed to be executed has grown out of no emergency.
The case is, therefore, plainly distinguishable from the cases of Mason v. Dunman, 1 Munf. 456; Phoebe v. Boggess, 1 Gratt. 129; and Offut v. Offut, 3 B. Monr. R. 162, cited by the counsel of the appellee. In each of these cases, it is true, there was a purpose and an effort to make a written, and not a nuncupative will. But in each of them the lioncompletion of the will, in the form contemplated by the testators, resulted from the act of God. In the first case the testator having made known the disposition he desired to make, a friend took notes of them, and retired into another room to draw them out formally, but before the instrument could be finished and presented to the testator for his approval and signature, he had become delirious, and incapable of reading it, or hearing it read. In the second case, the will was written by a friend from the dictation of the testator; and after it *551 was written, and read to and approved by the testator, he made an effort to sign it; but desisted, saying he could not see, and requested the friend who had it to sign it for him ; but before his signature could be thus made the testator swooned. And in the last case, the will was written at the request and in the presence of the testator, and was read to and approved by him ; but he died before the paper could either be subscribed by himself or attested by the witnesses.
The principle to be deduced from these cases is, that testamentary declarations made in the extremities of a last illness, may be established as a nuncupative will, if proved by the requisite number of witnesses who were present when they were made, even though there was a design by the testator to give to those declarations the form of a written will; the completion of such design being frustrated by the act of God depriving the testator of the capacity to perfect the instrument.
Such cases are no precedents for establishing the will here. The testatrix was not stayed or arrested in the execution of anything which it was her purpose to do. She had ample opportunity to make, and died in the belief that she had made and perfected a written will. The imperfection or fault in the paper left by her arising out of a failure on her part to have it duly attested in her presence, is to be imputed to no visitation of extreme illness or incapacity, but to a mistaken belief on the part of herself and of the witnesses, that an attestation in the mode and place selected by them was sufficient.
The eighth section of our statute on wills declares that no nuncupative will shall be established unless it be made in the time of the last sickness of the deceased, at his or her habitation, or whore he or she hath resided for ten days next preceding; except when the deceased is taken sick from home, and dies before he *552 or she returns to such habitation; nor when the value excee<3s thirty dollars, unless it be proved by two wit-that the testator or testatrix called on some person present to take notice or bear testimony that such is his or her will, or words of the like import. 1 Rev. Code of 1819, ch. 104, § 7.
It will be seen that our statute is nearly a literal transcript of the 19th section of the 29 Charles 2, ch. 3, which, with slight variation, has, I believe, been re-enacted in many, if not inmost, of our sister states.
It must be conceded that there has been some contrariety of judicial opinion as to the sense of the words “ last sickness” of the deceased, employed in the statute: Some of the decisions maintaining that by the “last sickness” is to be understood (in the language of Woodworth, J. in Prince v. Hazleton, 20 John. R. 502,) the sickness immediately preceding the death of the testator, without reference to any precise period of the disease, or any particular apprehensions the testator may be under as to his approaching dissolution; whilst a majority of them will, I think, be found concurring with the conclusions of the court in Prince v. Hazleton, as announced by Chancellor Kent, that a nuncupative will is not good unless it be made by a testator when he is in extremis, or overtaken by sudden and violent sickness, and has not time or opportunity to make a written will.
Prince v. Hazleton has been followed and closely adhered to by the Pennsylvania decisions, as will be seen by a reference to Yarnall’s Case, 4 Rawle’s R. 46; and Boyer v. Frick, 4 Watts & Serg. 357; and the case of Porter's Appeal, 10 Barr’s R. 254. In the last case the court held that the true policy of the law was, that when there is time the will must be written; but when there is not time, a verbal disposition is allowed in extremity; and still farther that in order to constitute a nuncupative will, there should not only be a *553 purpose on the part of the testator to make a testamentary disposition of his personal property, hut a purpose to make that disposition by a nuncupative will; “ not only the animus testandi, but the mind and intent to nuncupate.”
It is supposed by the counsel of the appellee, that the decisions of this court in the cases of Marks v. Bryant, 4 Hen. and Munf. 91, and Page v. Page, 2 Rob. R. 424, are in conflict with the opinions of Chancellor Kent and the majority of the court in the case of Prince v. Hazleton. Certainly no such conclusion can be fairly drawn from anything said by the judges who delivered their opinions in either of those eases; as in neither of them was any effort made to define the “ last sickness.”
In Marks v. Bryant, the only question discussed by the court was, Whether the testator could be said to have been taken sick from home, in the sense contemplated by the statute ? The substance of the evidence, which was reported, shows that the testator was boarding at City Point, and that he left that place the Sunday before his death, on a visit to his sister, a Mrs. Bryant; that he was then very ill, his disorder having begun with the ague and fever, and from that turned to a constant fever and sore throat; that he rode to Bryant’s, a distance of twelve miles, and there growing worse, died on the following Sunday; that he had been delirious at times, when the fever was on him before he left City Point; and after his arrival at Bryant’s was frequently delirious both before and after his speaking the testamentary words; but was in his senses at the time of speaking them, which was in the presence of three witnesses, on all of whom he called to take notice that what he said was his will. At what precise stage of his last illness the words were spoken, how many days or hours the testator lived after speaking them, no further appears from the *554 report of the case. Judge Tucker said that as the deceased was not ten days at the place where he died that event happened, and was proved to have been sick before and even when he left his usual liabitation, it seemed to be questioned whether he could be said to be taken sick from home. Judge Eoane, the only other judge who delivered a written opinion, states the controversy in the case in similar terms. After discussing the objects of the particular portion of the statute bearing on the precise question which they supposed raised in the case, they came to the conclusion that though the testator was not first taken sick from home, yet as he was taken so much worse after reaching Bryant’s house than he had been before, as never to leave the house again, the case wTas within the intent and meaning of the law. This can hardly be relied on with any propriety, as an express adjudication that it is not essential to the validity of a nuncupative will that it should be made in the extremities of a last sickness, and where opportunity is not afforded for making a written will. The same may also be said of the case of Page v. Page, which was also the case of a nuncupative will made away from the habitation of the testator. The depositions in the case showed that the testator was taken sick from home on the 17th of February; that he grew alarmingly ill on the 23d; and that the testamentary declarations were made on the 24th about 1 o’clock in the day, when the decedent was perfectly in his senses. His physicians did not see him till 4 or 5 o’clock in the evening, when he was worse. His physicians thought it doubtful, when they first saw him, whether he would survive the night or not; and they did not think him then capable of making a will. On the next morning his symptoms had improved, and he was perfectly in his senses; and he was in his senses at intervals every day between the 24th and the day of his *555 death, which occurred on the 4th March, being usually better in the morning and worse in the afternoon when his fever rose. The testamentary declarations made in the presence of two witnesses who were called on by the testator to take notice of them ; and on the 28th of February, the witnesses made a written certificate or memorandum of what was said by the testator.
I am free to admit that from this report of the substance of the depositions taken in the cause, seeing that some five or six days elapsed between the speaking of the testamentary words and the death of the testator, that a court might have inferred that the testator was not prevented by the exigencies of his condition from reducing his will to writing. But can we say that this court did so infer ? There were other questions in the cause, and the one under discussion was disposed of, in the opinion of the court, by the remark that it appeared from the evidence that the will “ was made by the testator in his last sickness, when he was of sound, disposing mind and memory, and with the solemnities required by law.” What the court understood to be the last sickness in the sense designed in the statute, they nowhere say. And looking to the fact that the depositions do not disclose what was the physical strength or debility of the testator in the interval between 1 o’clock and 4 o’clock of the day when the will was made, or in the interval between that day and his death, when he was in his senses ; and that it does not appear of what duration any one of those intervals was ; and as it is stated in the memorandum made by the witnesses to the nuncupation, that the testator assigned as a reason for calling on them to bear witness to his verbal disposition of his property, that “ he was too sick to have a will written and executed in the customary mode,” I cannot undertake to say, in the absence of some express opinion of the court to the contrary, that they *556 did not pay much deference to the testator’s own belief his condition, and draw the same conclusion which County court drew from the testimony, as appears from -fq,e recitals of its order, to wit, “ that the words were spoken by the decedent during his last illness, in extremity and in comtemplation of immediate death.”
I think there is nothing said or decided in either of these cases, which does not leave this court, untrammeled by precedent, free to hold, as in my opinion the obvious scope and design of the statute requires us to do, that the exception in favor of nuncupative wills is an indulgence extended only to the emergencies of a last sickness, when the testator has not the ability and opportunity to make a written will.
Certainly no case has been cited, nor do I think any can be found, which would justify us. in extending the provisions of the statute to a case like this; when there was not only no purpose to make a nuncupative will, no want of opportunity to make a written one; but where a written will was solemnly and deliberately prepared, signed by the testatrix and subscribed by the witnesses, with all the forms which they supposed the law required to perfect it as a written will. To hold this a good nuncupation would be to obliterate most of the distinctions between written and verbal wills, and to open wide the door to the frauds which it was the object and purpose of our statute on wills to exclude.
For these reasons I think that the Circuit court erred in admitting the paper offered as a nuncupative will to record as such; and without deciding the other questions raised in the petition, I am for reversing the order of the Circuit court, and rejecting the paper.
The other judges concurred in the opinion of Daniel, J.
Sentence reversed.