# Mellor, Appellant, v. Smyth.

*Will—Nuncupative will—Evidence—Charge of court.*

The provisions of the statute relating to wills are mandatory that a will must be in writing and signed by the testator, unless he is prevented from so doing by the immediate apprehension of death and there is neither time nor opportunity to make a written testament. There must be an urgent necessity or an emergency to justify a nuncupation.

In a contest to determine the validity of a nuncupative will, where it appears that the testatrix survived thirty-four hours after making of the will, a physician may be permitted to testify as to the physical condition of the decedent during the interval between the making of the will and the decedent's death.

On the trial of an issue to determine the validity of a nuncupative will, where the only question for the determination of the jury is whether the will was made when the testatrix was in extremis, it is reversible error for the court in its charge to dwell on the general proposition that the law does not favor, but merely tolerates, a nuncupative will. Such an instruction tends to lead the jury from the consideration of the one question submitted for their determination.

On the trial of an issue to determine the validity of a nuncupative will, it is proper for the court to call the attention of the jury to the interest of the witnesses in the result; and if the court does so in reference to the witnesses for the will it should do the same in reference to the witnesses against the will.

Argued Jan. 6, 1908. Appeal, No. 167, Jan. T., 1907, by Letitia B. Mellor, sole beneficiary and executrix named in the will of Margaret, known as Mary Margaret Bippus, deceased, from judgment of C. P. No. 4, Phila. Co., June T., 1906, No. 2,317, on verdict for defendant in suit of Letitia B. Mellor v. David J. Smyth, deputy escheator and administrator of Mary Margaret Bippus. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Issue to determine the validity of a nuncupative will. Before AUDENRIED, J.

At the trial when Dr. George E. Levis was on the stand the court under objection and exception permitted the witness to

testify as to the condition of Mrs. Bippus, the testatrix, on Sunday, December 10, 1905. [1]

The court charged in part as follows:

[Ordinarily I say all wills must be in writing. That is absolutely true without exception in respect to devises of real estate. They must be in writing. But under certain circumstances a will may be good, so far as it relates to personal property, when it is made by word of mouth. That is the case where the will is made in the extremity of the testator's last illness, which extremity has come upon him suddenly, unexpectedly, violently, so as to prevent his putting his testamentary wishes into writing. "In extremis" means at the extreme, the last point of one's last sickness. In order that a man's will made by word of mouth shall be good it must be made at the extreme end of his last sickness, that extremity having come upon him suddenly, unexpectedly, giving him no opportunity to reduce his wishes with respect to his property into written form, as required by the statute in ordinary cases. "In extremis" means in the last stages, in extremity, on toward the end, and it has reference to the testator's last sickness.] [2]

[This matter of oral wills, wills not in writing, is one which is not regarded with much favor by the law, or the courts that administer the law, because of the great danger of putting words into the mouths of people who have property, by interested and designing people. It is very easy to get up a will for a rich man which will be favorable to people towards whom he intended to show no favor, if there is not some such requirement as that the will shall be in writing, and it is only because of necessity that that rule, made for the purpose of preventing perjury and fraud, is relaxed. It is only in case of necessity, and the particular case of necessity in which such wills are permitted is that where a man makes it in the extremity of his last sickness, in his own house or habitation, where he has resided for ten days before he intends to made it, unless he is suddenly surprised away from home by a sickness which prevents him getting to his home. Now this lady was at her home. She was not taken with a sudden attack of sickness which kept her away from her residence. She died in the

house where she had resided for a long while before she attempted to make her will.

The only question in the case which the orphans' court has left open for your consideration, investigation and report, is this question as to whether Mrs. Bippus was in the extremity of her last sickness when she made her will, that extremity having come upon her suddenly and unexpectedly, and under such circumstances as to preclude the possibility of her reducing her intentions to writing or having them set down on paper for her by somebody else acting by her instruction.] [3]

[She was taken from her bed, as I understand the testimony, on Saturday about noon, and set upon the commode. There is some question as to whether that was near her bed or not. I think Mrs. Mellor said she assisted her there. It was after this that she began to talk again about giving Mrs. Mellor her property.] [4]

[Dr. Levis, who attended her, saw her the next day. He says that he called about two o'clock on Sunday afternoon. He says that he went into Mrs. Bippus's room, and he says that he found no one .else there except her, and that she at that time was not in bed, that she was sitting on what he thought was a chair but which he now says might have been a commode, with her back toward the window, some little distance from the bed. He says that he told her it was a dangerous thing for her to occupy such a position, that she was too near the .window, that with this disease of pneumonia, proximity to a window on a cold day would be a dangerous thing, and that he told her she had to get back to bed. He says he assisted her to bed, that he lifted her from her seat, whatever it was, and that placing one of his arms around her waist and steadying her by placing his other hand under the elbow of her arm nearest him, he led her a few steps to the bed. She apparently moved her feet and walked during this passage. Now that is Dr. Levis's story about the matter. He tells you further that Mrs. Bippus talked, and talked so that she could be heard by anybody in the room, even by those on the far side of the room. But what Dr. Levis says on this subject is contradicted by Mrs. and Mr. Mellor. They say that they saw Dr. Levis come into Mrs. Bippus's room and say that she was not talking freely or in an audible tone at that

time, and they say she was not at that time sitting on the chair or on the commode, but that she was in bed when he arrived there, and that she then showed no signs of physical power. You will have to make up your minds as to whose recollection of the occurrences at this particular time is the more accurrate, whether Dr. Levis is right or whether Mr. and Mrs. Mellor are right. It is quite important for you to determine that question, because if this lady was well enough to walk about the room and talk audibly and without difficulty, I think it is rather hard to say that she did not have an opportunity to dictate a will in proper form, have it reduced to writing, and sign it, either with her own hand or by the hand of some other person whom she authorized to attach her signature to it on her behalf.] [5]

[Now, in determining this question as to who is telling the truth about what was observable on Sunday, December 10, when Dr. Levis was in Mrs. Bippus's room, you ought to scan very closely the testimony of these witnesses and weigh their motives. Here we have Dr. Levis, who, so far as has been made to appear, has no interest whatever in this controversy. He does not stand to make or lose anything on the turn of your verdict. On the other side we have the testimony of Mrs. Mellor and Mrs. Mellor's husband. Mrs. Mellor is the claimant under the proposed will. It was Mrs. Mellor in whose favor the will that Mrs. Bippus is supposed to have made on December 9, was made ; she was the sole beneficiary under the will, if it was a will, and she is very much interested in your verdict, she is very much interested in making you believe that this old lady's condition was desperate, on the Saturday when she expressed herself in relation to her property to Mr. Crankshaw, and that she thereafter had no opportunity to set her will in writing. And Mr. Mellor is interested in this matter, through his wife and in the same way. You must not leave out of sight this question of interest when you come to weigh the testimony of the witnesses. Now I do not mean to say, I would not have you think I intend you to believe, that every man who is interested in a question is willing to perjure himself when he comes to testify about it. I would be very sorry to feel that human nature was so bad as that. I do say, however, that where a man has an interest in a question which

is at issue before a jury, and he comes to give his testimony about the subject of dispute, he is inclined—it is natural, it is only human nature, and we are all subject to that influence—to give himself the benefit of any doubt that arises, he is going to put his best foot first, he is going to tell the story as nearly favorably to himself as he can do it, truthfully I mean.  Interest gives a bias; it always leads us, not consciously always, generally unconsciously, to twist things a little in our own behalf, and it is on that account that the testimony of interested witnesses must be scrutinized with particular care, in such a case as this, which depends on that kind of testimony.] [6]

Verdict and judgment for defendant.  Plaintiff appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; (2–6) above instructions, quoting them.

*Samuel Wakeling,* with him *Richard Crankshaw, Jr.,* for appellant.—While the court may not favor nuncupative wills, the law provides that they may be made in a certain way and while they are to be considered with great care, yet in view of the positive and explanatory language of the act, they are not subject to harsh, arbitrary or unreasonable rules: Yarnall's Will, 4 Rawle, 46; Boyer v. Frick, 4 W. & S. 357; Werkheiser v. Werkheiser, 6 W. & S. 184; Porter's App., 10 Pa. 254; Haus v. Palmer, 21 Pa. 296; Rutt's Estate, 200 Pa. 549; Wiley's Estate, 187 Pa. 82; Megary's Estate, 25 Pa. Superior Ct. 243.

*Charles Knittel,* for appellee.—Nuncupative wills are not favored by law: Haus v. Palmer, 21 Pa. 296; Conaughton's Estate, 30 W. N. C. 202; Porter's Appeal, 10 Pa. 254.

OPINION BY MR. JUSTICE MESTREZAT, March 2, 1908:

In this state, every will is required by statute to be in writing, and unless the person making it shall be prevented by the extremity of his last sickness, must be signed by him at the end thereof or by some person in his presence and by his express direction.  It is provided, however, that personal estate may be bequeathed by a nuncupative will under certain restrictions, one of which is that it be made during the last sick-

ness of the testator. Under these statutory requirements, therefore, a nuncupative will is permissible only when it is made when the testator is in extremis or in the extremity of his last sickness. In construing the language of our statute, we have adopted the views of Chancellor KENT in the leading American case of Prince v. Hazleton, 20 Johns. 502, in construing a similar statute, in which he holds that a nuncupative will is not good, unless it be made by a testator when he is in extremis, or overtaken by sudden and violent sickness, and has not time or opportunity to make a written will: Priscilla Yarnall's Will, 4 Rawle, 46 ; Boyer v. Frick, 4 W. & S. 357 ; Werkheiser v. Werkheiser, 6 W. & S. 184. If, therefore, a nuncupative will is presented for probate, one of the essential requisites of its validity which must be made to appear is that it was made in the last sickness of the testator and that by reason of the near approach of death there was neither time nor opportunity for the testator to execute a written will. The provisions of the statute are mandatory that a will must be in writing and signed by the testator, unless he is prevented from so doing by the immediate apprehension of death and there is neither time nor opportunity to make a written testament. There must be an urgent necessity or an emergency to justify a nuncupation.

In the case at bar, the proponents produced to the register a nuncupative will alleged to have been made by Margaret Bippus on Saturday afternoon, December 9, 1905. The testatrix died about two o'clock on the following Monday morning. The register refused probate of the will, and an appeal was taken to the orphans' court which awarded an issue devisavit vel non to determine " whether the said Margaret, known as Mary Margaret Bippus, was ' in extremis ' at the time of the making and execution of the said will on the ninth of December, A. D. 1905." A precept was sent by the orphans' court to the court of common pleas, No. 4, of Philadelphia county, commanding that court to form an issue to try the question. An issue was framed in which the beneficiary and executrix named in the will was plaintiff and the administrator of the estate was named as defendant. The trial of the issue resulted in a verdict and judgment for the defendant. The plaintiff has taken this appeal.

The first specification alleges error in admitting Dr. Levis to testify to the physical condition of the decedent on Sunday, the day after the alleged will was made. There is manifestly, however, no merit in this assignment. The question at issue before the jury was whether the decedent was in extremis at the time she made the alleged will, and that included her physical condition thereafter until her death in the early morning of the following Monday. Thirty-four hours elapsed from the time the decedent made the declaration disposing of her property until she died, the declarations having been made about four o'clock on Saturday afternoon and the death having occurred about two o'clock on Monday morning. The testimony of the proponent tended to show that when the declarations were made that she was so feeble that she was incapable of doing any physical act, and it is the contention of the proponents of the will that this debility or feebleness continued until death. Unless such debility continued, thereby giving no time or opportunity to execute a written will, nuncupation cannot be permitted, and the alleged will of the decedent is invalid and of no effect. If, as contended by the appellee, the decedent was fully capable of executing a written will on Sunday, and had the opportunity of so doing, her enfeebled condition, if it existed on Saturday, would not be an emergency or necessity which would justify the making of a nuncupative will. The testimony offered by the appellee, the subject of this assignment, tended to show not only that the decedent's physical condition on Sunday was such that she could have executed a written will, but also that there was no such debility or feebleness at the time she nuncupated as to prevent her from conforming to the requirements of the provisions of the statute by executing a written will. The first assignment of error is not sustained.

In the opinion of the orphans' court, directing the issue to the common pleas, the court held : " That the testamentary capacity of the testatrix, the animus testandi, and the substantial identity of the declarations as contained in the paper propounded for probate with those made by the testatrix were sufficiently established, and that the only point upon which a reasonable doubt could be entertained is whether the testatrix, at the execution of the will, was in extremis." This was the

single question before the jury, and it was a question of fact. The jury were not required to determine the validity of the nuncupative will, but to ascertain whether the decedent in nuncupating was in extremis. They had nothing to do with the policy of the law which declares that a nuncupative will is never favored, but simply tolerated. If the testimony produced on the trial warranted the jury in finding that the decedent was in extremis at the time she executed the will, a verdict should have been rendered for the appellant. In determining this question they should not have been influenced by any considerations of policy which required a strict compliance with the essential requisites of a valid nuncupation. A clear and adequate explanation of the meaning in extremis should have been given in the charge, and the attention of the jury should have been directed to the testimony tending to establish the contention of the plaintiff and defendant. This would have left the issue to the determination of the jury with their minds unencumbered and uninfluenced by any extraneous matter.

We are inclined to think that the trend of the charge had a tendency to lead the jury from the consideration of the one question submitted for their determination. We refer especially to that part of the charge made the subject of the third assignment of error. The dangers arising from nuncupative wills are no doubt as pointed out by the learned judge, but, as observed above, they should have no weight or bearing with the jury in determining the single question of fact presented for their consideration. Whether oral wills are " not regarded with much favor by the courts because of the great danger of putting words into the mouths of the people who have property by interested and designing people," or whether " it is very easy to get up a will for a rich man which would be favorable to people towards whom he intended to show no favor" was wholly beyond and outside of the issue which the jury were sworn to try. The effect of such language and its repetition, or its equivalent, in the charge would necessarily be to influence the minds of the jury against the proponents of the will, and require a higher or greater degree of proof to sustain the will than the law demands. Such matters were wholly irrelevant to the issue being tried, and the admonition

they contained was not necessary to guide the jury in determining the physical condition of the decedent at the time she made the declaration contained in the paper alleged to be her will. Such admonition should ever be present with the court in determining the validity of a nuncupative will, but they should not be used in a charge to a jury which were sworn to determine the single fact of the physical condition of the testator.

The court very properly called attention to the interest of the Mellors in the issue before the jury. The jury in determining the weight of their testimony should have taken their interest into consideration. We are not prepared to say, however, that the suggestion of the learned counsel for the proponents is wholly without merit wherein it is said that " the court hit too hard and kept it up too long." The act of assembly made the legatee and her husband both competent witnesses, and while it was proper for the court in its charge to allude to the fact of their interest in the result of the trial, as affecting their credibility, it should have done so in such manner as to leave the credibility of the witnesses entirely to the jury. The reference to the interest of the legatee and her husband without any allusion to the interest of Dr. Levis and the suggestion that Dr. Levis was a wholly disinterested witness would necessarily discredit the testimony of Mr. and Mrs. Mellor. No reference was made in the charge to the opportunities of the attorney and the physician for judging of the condition of the decedent on Saturday nor the fact of the legatee's refusal to pay the fee which the doctor demanded as an expert witness. These matters are referred to as of some consequence in the opinion of the orphans' court in awarding the issue. Of course, it cannot be expected that a trial judge will advert to all such details unless his attention is called to the matter by counsel, but in a case of this character and where there are but very few witnesses to the material point in the case, it is not well to omit to call the jury's attention to the interest of any witness in the case. We merely direct attention to this matter in view of the fact that the case goes back for another trial.

It seems by a reference to the notes of the testimony, that there is some ground for the error alleged in the fourth assign-

ment. Referring to the testimony it seems to show that the decedent was not taken from her bed on Saturday noon as stated by the court; it appears to have been on Sunday afternoon.

While the remarks of the court, the subject of the third assignment of error, were not made by the learned trial judge with the intention of unduly influencing the jury, yet we think they may have had that effect. They were not pertinent to the issue being tried and we cannot say that they did not mislead the jury. Such being the fact, we are required to reverse the judgment and direct the case be tried again.

The judgment is reversed with a venire facias de novo.